After a full argument on the points above stated, Chancellor MaRshall delivered the decree of the court.
The bill in this case, is brought by the heirs and representatives of Benjamin Cattell, against the representatives, executors, and legatees of the estate of Wm. Cattell, for an account, and for a discovery of property claimed under the will of the ancestor Wm. Cattell, made in 1732, and under a decree of the then Court of Chancery, founded on that will, and made in 1756. Notwithstanding the extensive discussion this case has undergone, the variety of points stated, and the diversity of grounds taken by counsel, we find that it must at length terminate in an account before the master. It is in its nature, a mere matter of account, though it becomes necessary, previously to estab- *55 fish some principles or positions by which the reference must be regulated. •
Col. Wm. Cattell was the heir at law of the testator, at the time of the decree in 1756. The estate in Stanyarne’s tract of land, Deer Island tract, and the house at Ashley Ferry, which had been devised to Peter, ("who was J 1 1 ^ dead,) was limited by the decree to testator’s six grand children, as tenants in common for life, and after their deaths respectively, then to testator’s heir at law, in fee.-— With respect to the lands of Charles, the decree limits the estate in the following manner : — To such of the grand children as might be living at the death of Charles, as tenants in common for life, and after their deaths respectively, to testator’s heir at law, who shall be then living, in fee. The decree therefore, has made a different disposition of the fee in the respective estates ; giving it to the heir at law generally, as to Peter’s lands, and to the person who might be heir at law, with regard to Charles’s lands, when any of the life estates fell in. Col. Wm. Cat-.tell then had a vested remainder in Peter’s lands; and two of the grand children having died in his life time, the fee vested in him.
There has been much controversy in this case, on the subject of the lapse of time. The reasons must be forcible, and the circumstances of a strong character, to induce this court to interpose it as a bar, admitting the case not actually barred by the statute. But neither the principle, nor the cases cited, apply to this case ; because Benjamin Cat-tell did not arrive at age till July, 1772. His uncle John Cattell, the executor and trustee, died in 1774. The revolution commenced in 1775. The declaration of independence was in 1776; and the limitation act was suspended during the war, and for some time after. Benjamin Cattell died during the war, viz: in 1782. The complainants were all infants, nearly till the time of filing the bill: therefore Laches is not imputable to them. Besides, this is a'trust estate, against which the limitation does not run or operate. No doubt the lapse of years, under whie *56 this claim has been buried, has greatly obscured many points of the cause, and thrown doubts on transactions, in former days, might have been cleared up by the most satisfactory evidence. But it is for the complainants to make out their accounts before the master, by evidence an¿ documents : If they do not, they will fail. *
mi The defendant Bowman cannot possibly render an ao count, never having possessed Wm. Cattell’s books or papers. Complainants deny that they are possessed of any, and offer to answer any interrogatories on the subject, to save the delay and expence of a cross bill. They must establish their own case.
From the decree of 1756, it will appear what part of the grand father’s estate William and Benjamin, the grand sons, were entitled to. The tax return of John Cattell, the executor and trustee, in 1767 or 8, shews what estate he had in his possession, belonging to William and Benjamin. The list of debts which were due to William Cat-tell, the testator, in Col. William Cattell’s own writing, shews what money had been received by John Cattell, the •executor and trustee, and also, by Col. Wm. Cattell. The will of John Cattell'shews, that Wm. Cattell was his sole executor and residuary legatee; and the inventory of his estate, returned by Col. Wm. Cattell, will shew what he derived from his uncle, so as to make it liable in his hands, to satisfy the complainants claims, (when they are established) prior to any of Col. Wm. Cattell’s creditors or legatees.
There is no evidence even of a presumptive nature, before the court, that Col. Wm. Cattell ever settled his brother’s claims with him. On the contrary, it appears that in 1777, Benjamin Cattell had determined to prosecute his demand, but was dissuaded from it by their mutual friends. Col. Wm. Cattell dying in 1778, and leaving Benjamin his executor and residuary legatee, there was then no person whom he could sue, or against whom he could prosecute a claim, as the residuary estate was devised to himself. It has been contended that he waived his *57 claim, by accepting the' estate. Supposing that to be the fact, (which does not appear, for all his transactions were purely as executor) he could only be deemed to have waived it, under an idea, that he was to have an equi- , , , r ... ~ , . . valent: but that tailing, ot course his claim must revive, and be satisfied out of the estate of John Cattell, which came into the possession of Col. Wm. Cattell, as far as it can be traced, or may be sufficient; he having a prior and superior equity to either Col. Wm. Cattell’s creditors or legatees.
Note. — See the case ofl-Iercy vs. Uimvoody ; 4 Bro. C. C. 257.— Hoveden vs. Lord Annesly; 2 Scho. & Lef’r. 630. Smith vs. Clay; Ambler, 645. Delovain vs Brown; 3Bro. O. C. 633. Beckford vs. Cloze; 3 Bro. C. Cl 644. Webster vs. Webster; 10 Ves. 93. Earl of Pomfret vs. Lord Windsor ; 1 Ves. 472.
Desatjssure and Ford, for complainants.
Pringue, for defendants.
It was urged that Mrs. Bowman, in consequence of having received this legacy, had not demanded her dower in the lands of Col. Wm. Cattell, although by the will, she is not barred ; and if this legacy was resumed, she would set up her claim of dower, which was paramount all creditors. This is true, and must be admitted. If defendant thinks proper to relinquish the legacy, and claim dower, or set up her claim of dower by way of discount, the court will order it to be ascertained. ' .
It is unnecessary in thi's stage of the business, to say any thing as to the mode of refunding, or of the other legatees. This must await the result of the account before the master.
As to the injunction granted in this case, on the bond given by Col. Wm. Cattell and Benjamin Cattell, to the estate of Thomas Lynch, it is ordered that it be dissolved.